IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AUGUST D. BASS #02241669, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:22-CV-715-S-BK |
| | § | |
| FNU NDIFORBA, ET AL. | § | |
| Defendants. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this *pro se* prisoner case was referred to the undersigned United States magistrate judge for pretrial management, including the issuance of findings and a recommended disposition where appropriate. The Court granted Plaintiff August D. Bass leave to proceed *in forma pauperis* ("IFP") but withheld service of process pending judicial screening. As explained below, Bass's claims should be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B).

**I. BACKGROUND**

Bass, a Texas inmate, filed this 42 U.S.C. § 1983 action against officials at the Hutchins State Jail, complaining that he was exposed to excessive amounts of synthetic marijuana (K2)[1] smoke and that some defendants failed to protect him from other inmates who attacked and extorted him. Doc. 1 at 4; Doc. 33 at 1, 3, 6. He initially sued Lieutenant ("Lt.") Ndiforba, Assistant Warden Phillip McCain, Warden Lopez, Officer Hill, and Sergeant ("Sgt.") Mistretta

---

[1] K2 is a mixture of herbs and spices that is typically sprayed with a synthetic compound chemically similar to THC, the psychoactive ingredients in marijuana. *Jabary v. City of Allen*, Case No. 4:10-cv-711, 2015 WL 294279, at *1 (E.D. Tex. Jan. 22, 2015), *affirmed as modified by Jabary v. McCullough*, 686 F. App'x. 282 (5th Cir. 2017). K2 products are normally smoked in joints or pipes. *Id.*

in the Eastern District of Texas. Doc. 1. That court transferred his case here. Doc. 22. After the transfer, Bass voluntarily dismissed his claims against Warden McCain, Officer Hill, and Sgt. Mistretta, but purported to add a party, an unidentified major or captain within Bass's unit at Hutchins (Jane Doe). Doc. 26; Doc. 33 at 6; Doc. 35.[2] As to Lt. Ndiforba, Warden Lopez, and Jane Doe, he alleges in his complaint and responses to a Magistrate Judge Questionnaire (MJQ)[3] as follows:

In 2019, there was "immense" secondhand K2 smoke in Bass's unit. Doc. 1 at 4. Extortion among inmates was also virtually unstoppable at that time, and "tattoo gangs" dominated the general population. Doc. 1 at 6. The tattoo gangs "extorted" Bass. Doc. 1 at 4. The extreme extortion, which was a common issue among inmates who did not partake in gang activity associated with K2 and tattoos, caused Bass to suffer unspecified physical and emotional damages. Doc. 1 at 6.

Bass asked "officers" to move him to a "'non-smoking bloc,'" but Bass was instead moved to a block with even more smoke, causing him to suffer bronchitis and a sleeping disorder. Doc. 1 at 4; Doc. 33 at 7. He also missed a GED class and was hospitalized in the infirmary. Doc. 1 at 4; Doc. 33 at 6. He ssubmitted "up to one dozen" I-60's to move to another unit where inmates were not using K2 and tattoo guns, as well as "half a dozen" grievances about "the general population of the Hutchins State Jail being dangerous with extortionous [sic]

---

[2] Bass's answers to the MJQ constitute an amendment to his complaint. See *Marcias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

[3] Bass also filed many "letters" and a proposed supplement to his complaint. See Doc. 7; Doc. 8; Doc. 10; Doc. 14; Doc. 16; Doc. 17; Doc. 19; Doc. 20. All those filings were contrary to the Eastern District of Texas's filing fee order that required prior Court approval of any supplement to the complaint. Doc. 6. at 2. Therefore, the Court has not considered these documents for screening purposes. See, e.g., *Leget v. PSS World Med. Inc.*, Civil Action No. L-07-63, 2009 WL 514051, at *3 (S.D. Tex. Mar. 2, 2009) (Notwithstanding liberal construction given to *pro se* filings, "*pro se* litigants must comply with statutory obligations and abide by the rules of this Court") (citing *Castro Romero v. Becken*, 256 F.3d 349, 354 n.2 (5th Cir. 2001); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)); *see also Muhammad v. Wiles*, 841 F. App'x 681, 683-84 (5th Cir. 2021) (per curiam) (supplements to the complaint should not be considered for screening purposes when filed without leave of Court under Rule 15(d)).

conditions and also hazardous to poisonous secondhand K2 smoke," but Warden Lopez ignored his grievances and requests. Doc. 1 at 4, 6.

Bass also "warned" Lt. Ndiforba about the increase in tattoo gangs and their violence. Doc. 33 at 3. He informed Lt. Ndiforba that tattoo gangs were "extorting" him. Doc. 1 at 4. But Lt. Ndiforba—confusing him with another inmate—believed Bass was a "lier [sic], someone who was trying to escape the general population." Doc. 33 at 3. He accordingly ignored Bass's request for an Offender Protection Investigation (OPI) and instead housed him in "D1," where tattoo gang members attacked him in February 2021, causing bumps and bruises. Doc. 33 at 3.

As for Jane Doe, she was a major or captain in Bass's unit. Doc. 33 at 6. She was aware that K2 was being used regularly and that it "dominated" the general population. Doc. 33 at 6. She knew secondhand K2 smoke was "unstoppable" and everywhere within the unit at that time. Doc. 33 at 6. But she did nothing to remedy the issue. Doc. 33 at 6.

Bass seeks monetary damages. Doc. 1 at 4.

## II. LAW AND ANALYSIS

Bass's complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Those statutes provide for the *sua sponte* dismissal of a complaint if the Court finds that it (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in law when it is premised "on an indisputably meritless legal theory," *Id.* at 327, and fails to state claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Court must always liberally construe the pleadings of *pro se* litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers"); *cf.* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."). Even under the most liberal construction, however, Bass's complaint fails to state a claim.

### A. Failure to Protect

Liberally construing his allegations, Bass claims that Warden Lopez and Lt. Ndiforba failed to protect him from an attack by members of a tattoo gang, resulting in "bumps and bruises." Doc. 33 at 1, 3. Initially, Bass has failed to demonstrate that he suffered a physical injury in relation to this claim which, under the Prison Litigation Reform Act ("PLRA"), bars his request for compensatory damages. Specifically, pursuant to the PLRA, a prisoner may not bring a federal civil action requesting compensatory damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury required must be more than *de minimis* but need not be significant. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). "A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks." *Luong v. Hatt*, 979 F.Supp. 481, 486 (N.D. Tex. 1997). "Injuries for which free world individuals would not seek emergency room or other professional medical care are not significant." *Purtell v. Corr. Corp. of Am.*, Civil Action No. 2:05CV192-MPM-JAD, 2007 WL 1464376, at *2 (N.D. Miss. Mar. 26, 2007). Injuries which "normal people treat with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997(e)(e)." *Whitney*

*v. Taylor*, Civil Action No. 2:05CV110-WAP-JAD, 2007 WL 2254348, at *4 (N.D. Miss. July 13, 2007) (citing *Luong*, 979 F.Supp. at 486).

Bass vaguely claims that the assault resulted in "bumps and bruises." Doc. 33 at 3. He does not allege that his injuries required any medical care. He alleges only a *de minimis* injury, which is insufficient under the PLRA, and he therefore fails to state a failure-to-protect claim. *Luong*, 979 F.Supp. at 486; *see also Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997) (holding that a sore and bruised ear lasting for three days was *de minimis* and did not meet the PLRA's physical injury requirement).

Alternatively, the failure-to-protect claim is meritless under the Eighth Amendment. Prison and jail officials have a duty to protect prisoners from violence at the hands of other inmates. *Leal v. Wiles*, 734 F. App'x 905, 909 (5th Cir. 2018) (citation omitted) (per curiam). To prevail on a failure-to-protect claim, a plaintiff "must show that he [was] incarcerated under conditions posing a substantial risk of serious harm and that [jail] officials were deliberately indifferent to his need for protection." *Id.* An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate…safety" and disregards that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).

As for Warden Lopez, the only facts that Bass asserts with respect to the claim are that he did not respond to I-60s and grievances concerning a risk of extortion by tattoo gangs. Doc. 1 at 6. What Bass means by "extortion," and how it relates to the alleged assault, is unclear. At any rate, Warden Lopez is a supervisor, and "[a] supervisory official may be held liable…only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he

5

implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

Bass fails to plausibly allege supervisory liability under either of those theories. The receipt of informal letter complaints or grievances is not sufficient to establish Warden Lopez's personal involvement in the constitutional violation or deliberate indifference. *See*, *e.g.*, *Thomas v. Samuel*, Civil Action No-CV-00158, 2022 WL 19001964, at *11 (S.D. Tex. Dec. 7, 2022), *rec. accepted* 2023 WL 1529544 (S.D. Tex. Feb. 2, 2023) ("The receipt of informal letter complaints or grievances is not sufficient to establish Warden Sanchez's personal involvement in the confiscation of the boot.") (citing *Keys v. United States*, No. 3:17-CV-2940-N-BH, 2020 WL 2753143, at *4 (N.D. Tex. Apr. 20, 2020), *rec. accepted* 2020 WL 2745604 (N.D. Tex. May 27, 2020) ("Although he claims he submitted grievances to Warden regarding his inadequate dental care and waitlist status, a failure to respond to a letter or grievance does not rise to the required level of personal involvement for liability."); *Murphy v. Andrews*, No. 6:10CV508, 2011 WL 13152301, at *3 (E.D. Tex. Apr. 1, 2011), *rec. accepted* WL 13152302 (E.D. Tex. May 6, 2011)); *see also Miguel v. Cochran*, 2020 WL 7700633, at *10 (N.D. Tex. Nov. 25, 2020), *rec. accepted* 2020 WL 7698760 (N.D. Tex. Dec. 28, 2020) (the grievance process alone is insufficient to place the defendant on notice of a serious risk of harm) (citations omitted). Nor is there any allegation that Warden Lopez implemented an unconstitutional policy that resulted in Bass's alleged injury.

As for Lt. Ndiforba, Bass claims that he told him about an increase in tattoo gang violence, that the tattoo gangs were extorting him, and that he was certain that he would be "victimized" right away unless there was an OPI. Doc. 1 at 4; Doc. 33 at 3. He claims that Lt. Ndiforba refused to grant an OPI because he thought, incorrectly, that Bass was a "lier

[sic]…someone who was trying to escape the general population." Doc. 33 at 3. Bass's allegations do not allow for a plausible inference that Lt. Ndiforba was subjectively aware of a serious risk of harm posed by another inmate; instead, it appears that Lt. Ndiforba simply did not believe Bass's claims. *See*, *e.g.*, *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010) ("Deliberate indifference implies an official's actual knowledge of facts showing that a risk of serious harm exists as well as the official's having actually drawn that inference.") (citing *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)) (internal quotation marks and citations omitted); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (per curiam) ("[T]he allegations of [Plaintiff's] complaint do not show the requisite subjective knowledge of a serious risk of harm, and, thus, do not state a claim for deliberate indifference resulting from the attack by [a fellow inmate]. Put another way, because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [the inmate who attacked him] and failed to take protective measures, his claim fails."); *Hendrix v. Davenport*, Case No. 2:15-CV-247-WKW, 2018 WL 3979482, at *7 (M.D. Ala. June 13, 2018), *rec. accepted* 2018 WL 3978968 (M.D. Ala. Aug. 20, 2018) ("[H]is deliberate indifference claim fails, as he has presented no evidence that the defendants were subjectively aware of any serious risk of harm to him posed by inmate Tuck. To the contrary, assuming arguendo Hendrix advised the defendants he feared inmate Tuck for the above-stated reason, Hendrix acknowledges that the defendants did not believe that inmate Tuck posed a threat to his safety.").

      Bass has failed to allege a plausible failure-to-protect claim against Warden Lopez or Lt. Ndiforba, and such claims should be dismissed.

### B. Secondhand Smoke

Bass claims that he was exposed to excessive secondhand K2 smoke in violation of the Eighth Amendment. *See*, *e.g.*, Doc. 1; Doc. 33. These allegations relate to Warden Lopez and Jane Doe. Doc. 1 at 4-5; Doc. 33 at 5. The Supreme Court has applied a two-pronged test to determine whether exposure to secondhand smoke violates a prisoner's Eighth Amendment right. *Wesley v. LeBlanc*, No. 1:20-cv-00243, 2021 WL 1219982, at *4 (W.D. La. Mar. 15, 2021). First, a prisoner must show that he is being exposed to unreasonably high levels of secondhand smoke and "that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993)). Second, a prisoner must show, subjectively, that the prison authorities were deliberately indifferent to his plight. *Id.*

Bass fails to plausibly allege that Warden Lopez was deliberately indifferent to his secondhand exposure to K2 smoke or personally involved in any constitutional violation. As with the failure-to-protect claim, he alleges that he sent Warden Lopez I-60's and grievances, some of which mentioned K2 smoke exposure, and which show knowledge of the risk of harm but a failure to respond to it. *See* Doc. 1 at 4 (complaining that Warden Lopez ignored his grievances and I-60s). Again, according to most courts in this circuit, that is insufficient to show Warden Lopez's deliberate indifference or personal involvement in any constitutional violation. *See*, *e.g.*, *Tilmon v. Chairman*, Case No. 3:21-CV-04937, 2022 WL 18285058, at *6 (W.D. La. Dec. 27, 2022) (rejecting secondhand smoke deliberate indifference claim against supervisory defendant where the plaintiff alleged that the supervisory official had knowledge of the conditions at the jail through "grievances and social media"), *rec. accepted* 2023 WL 205342 (W.D. La. Jan. 17, 2023) (citing *Wesley*, 2021 WL 1219982, at *4 (finding that plaintiff's assertion that he sent Secretary LeBlanc written complaints informing him of exposure to

8

environmental tobacco smoke was insufficient to establish Secretary LeBlanc's deliberate indifference or personal involvement in the alleged constitutional violation); *Hennington v. Stiefer*, Civil Action No. 6:20cv593, 2021 WL 11086208, at *2 (E.D. Tex. Feb. 4, 2021) (collecting cases); *but see Garcia v. Rodriguez*, Civil Action No. 1:22-cv-102, 2022 WL 18456615, at *5 (S.D. Tex. Dec. 21, 2022), *rec. accepted* 2023 WL 375367 (S.D. Tex. Jan. 24, 2023) (finding that the plaintiff stated a secondhand smoke deliberate indifference claim against the warden when he complained to the warden and submitted several grievances regarding ongoing smoking in his dorm).

Bass also suggests that he can show Warden Lopez's personal involvement and deliberate indifference to a substantial risk of serious harm given how prevalent secondhand smoke was, specifically, because K2 was "all over the unit except for the Echo blocks and a couple of blocks in Bravo and Charlie." Doc. 33 at 1.  But this allegation does not plausibly establish that Warden Lopez was aware of a specific risk of harm to Bass.  As Bass acknowledges, the secondhand smoke was not in some areas of the prison, so Warden Lopez would not be aware of a substantial risk of serious harm simply because Bass was an inmate.  And, as discussed, to the extent that Bass is intending to proceed on a theory of supervisory liability against Warden Lopez, he fails to allege that Warden Lopez implemented an unconstitutional policy that caused injury.  *See Gates*, 537 F.3d at 435.

Bass fails to plausibly allege a secondhand smoke deliberate indifference claim against Warden Lopez.

As for Jane Doe, Bass claims that she knew inmates were regularly using K2 and was convinced that "K2 was unstoppable and everywhere there at the unit at that time." Doc. 33 at 6. These vague and conclusory allegations are insufficient to establish deliberate indifference.  As

9

to the objective prong of the analysis, Bass must allege exposure to "unreasonably high levels" of secondhand smoke. *Helling,* 509 U.S. at 35. Bass never attempts to specify how much smoke he was exposed to. His conclusory descriptions of the smoke as being "unstoppable," "everywhere," and "immense," do not allow a determination that he was exposed to an unreasonable level of smoke or that it was beyond the pale of what society tolerates. *See*, *e.g.*, *Ozier v. Berghuis*, No. 1:08-cv-1203, 2009 WL 1559786, at *2 (W.D. Mich. June 1, 2009) ("Nevertheless, Plaintiff failed to allege any facts quantifying his level of exposure to ETS. Plaintiff's conclusory allegations regarding the level of ETS to which he was exposed fail to support the objective component of an Eighth Amendment claim.") (citing *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000)).

As for subjective indifference, Bass does not allege that Jane Doe knew that Bass, specifically, was exposed to K2 smoke at all—much less at some unreasonably high level. He does not allege what, if anything, she could or should have done to alleviate the harm, i.e. how she acted with deliberate indifference even if she had actual knowledge of a serious risk of harm to Bass. Bass's claims against Jane Doe are meritless and should be dismissed with prejudice.

### III. LEAVE TO AMEND

In sum, Bass fails to state any cognizable claim under Section 1983. Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal, but leave is not required when he has already pled his "best case." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). A verified questionnaire response allows a plaintiff to plead his or her best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F.

App'x 279 (5th Cir. 2015) (per curiam). Here, Bass responded to a detailed MJQ designed to allow him to clarify his claims and present his best case. Accordingly, the Court concludes that Bass has stated his best case and justice does not require that the Court automatically grant Bass leave to amend his allegations. Accordingly, the Court should dismiss this lawsuit with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Bass's claims should be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B).

**SO RECOMMENDED** on September 8, 2023.

*[signature]*
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).